FLEET BUSINESS CREDIT, L.L.C.,
a Delaware Limited Liability
Company, Plaintiff,

v.

WINGS RESTAURANTS, INC., a Texas
corporation and Huge American Real
Estate Inc., a Texas corporation, and
Sunil Dharod, an Individual, Defendants,

and

KFC Corporation, Defendant–
Intervenor.

No. 02–CV–884–P(J).

United States District Court,
N.D. Oklahoma.

April 10, 2003.

Charles Greenough, John Alfred Burkhardt, Jr, Boone, Smith, Davis, Hurst & Dickman, Tulsa, OK, for plaintiff.

Douglas J Buncher, Neligan, Tarpley, Andrews & Foley LLP, James Robert Krause, Friedman & Feiger LLP, Dallas, TX, David Alan Cheek, McKinney, Stringer PC, Tulsa, OK, for defendants.

Sarah Jane McKinney, Hall, Estill, Hardwick, Gable & Nelson, Tulsa, OK, Jeffrey H. Dasteel, Amy S. Park, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, CA, for KFC Corp.

## ORDER

JOYNER, United States Magistrate Judge.

Now before the Court is the Motion by Plaintiff Fleet Business Credit, L.L.C. ("Fleet") for Appointment of a Receiver over the Real Property of Defendant Huge American Real Estate, Inc. ("Huge"). [Doc. No. 38]. Huge is the owner of nine (9) tracts of real property which have been leased to Defendant Wings Restaurants, Inc. ("Wings"). Wings filed for Chapter 7 bankruptcy on February 20, 2003 in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, Case No. 03–31–921. On February 26, 2003, Wings successfully converted to a Chapter 11 bankruptcy.

The Court has reviewed the parties' briefs and exhibits, relevant case law, and held an expedited hearing on the Motion for Appointment of a Receiver on March 26, 2003. Accordingly, the Court **GRANTS** Fleet's Motion to Appoint a Receiver over the Real Property of Huge American Real Estate, Inc. The Court further appoints Ben C. Kemendo as receiver over the real property in order to collect and hold any rents paid by Wings to Huge under the lease during the pendency of this action. [Doc. No. 38].

## BACKGROUND

Fleet, Wings, and Huge executed a Loan and Security Agreement ("Agreement"), dated October 10, 2000, under which Fleet agreed to make several loans to Wings and Huge, as joint debtors, the maximum principal of the loans totaling $15,750,000.00. The Agreement was executed contemporaneous with the purchase by Wings and Huge of seventeen (17) KFC restaurants from KFC Corporation ("KFCC"), who intervened in the lawsuit on January 30, 2003. [Doc. No. 33]. At the close of the transactions, Fleet advanced $13,250,000.00 to Wings and Huge. Of this amount, $4,500,000.00 was used to acquire land and buildings for the seventeen (17) restaurants and $8,750,000.00 was utilized for the purchase of furniture, fixtures, equipment, and franchise rights for the seventeen (17) restaurants.

The total purchase price for the seventeen (17) restaurants was $15,195,000.00. Sunil Dharod, an individual, was to contribute the difference of approximately $2,000,000.00. Presently, Huge owns the real property underlying nine (9) of the seventeen (17) KFC franchise restaurants. Wings leases these properties from Huge pursuant to a lease agreement dated September 28, 2000. Wings operates the seventeen (17) restaurants and owns the personal property.

Dharod subsequently entered into a subordination agreement with Fleet. Fleet filed this lawsuit on November 19, 2002. On December 19, 2002, Fleet filed a motion for appointment of a receiver over all assets belonging to Wings and Huge. KFCC filed a motion to intervene as a defendant on December 31, 2002, pursuant to its franchise agreements with Wings, which this Court granted.

On February 20, 2003, Wings filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. The Court held its scheduled hearing on Fleet's Motion for Appointment of a Receiver on February 21, 2003. On February 26, 2003, Wings converted its Chapter 7 bankruptcy to a Chapter 11 bankruptcy, under which Wings became debtor in possession entitled to operate its property, i.e., the seventeen (17) KFC franchise restaurants. KFCC and Fleet jointly filed a motion to appoint a trustee over Wings.

Currently before this Court is Fleet's Motion for Appointment of a Receiver over the Real Property of Huge in order to collect and retain rents paid by Wings to Huge during the pendency of this case, including any funds currently held by Huge representing rents paid by Wings. According to the September 28, 2000 lease agreement between Wings and Huge, the minimum monthly rent payable to Huge is $48,331.00. The nine (9) tracts of land have been pledged by Huge to Fleet as security for repayment of the loans extended. At the March 26, 2003 expedited hearing on the motion for receivership, Fleet's counsel noted that some of the restaurants have been reopened.

## DISCUSSION

Fleet asserts that the appointment of a receiver over the real property of Huge for the purpose of collecting rents paid by Wings to Huge during the pendency of this case is necessary to preserve the funds. Additionally, Fleet maintains that such an action does not violate the automatic stay in Wings' bankruptcy proceeding because Fleet is not pursuing claims against Wings or acting to assert control over any property of Wings. Huge contends that the automatic stay in Wings' bankruptcy proceeding should be extended to Huge, and that the appointment of a receiver over the real property will impact property of Wings and the bankruptcy estate.

For the reasons discussed below, the Court finds that appointing a receiver over the real property of Huge is permissible in this action, and that the automatic stay should not be extended to protect Huge, a solvent co-debtor and co-defendant of Wings. Accordingly, the Court GRANTS Fleet's Motion to Appoint a Receiver over the Real Property of Huge in order to collect and hold rents paid by Wings to Huge during the pendency of this case. Ben C. Kemendo shall act as receiver over the nine (9) parcels of real property pledged as security for repayment.

### A. THE AUTOMATIC STAY

Fleet's claims against Wings were stayed pursuant to 11 U.S.C. § 362(a)(1) following Wings' filing Chapter 7 bankruptcy and subsequent successful conversion to a Chapter 11 bankruptcy. Huge argues that the protection of the automatic stay should extend to Huge and preclude the appointment of a receiver over Huge's real property.

Under § 362(a)(1), a bankruptcy petition operates as a stay of

the commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a

claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a)(1). The general rule in the Tenth Circuit is that "[w]hile § 362 extends the stay provisions of the Bankruptcy Code to the 'debtor,' . . . the stay provision does not extend to solvent codefendants of the debtor." *See Oklahoma Federated Gold & Numismatics, Inc. v. Blodgett,* 24 F.3d 136, 141 (10th Cir.1994); *see also Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir.1984); *In re Metal Ctr., Inc.,* 31 B.R. 458, 462 (Bankr.D.Conn.1983) (automatic stay does not apply where codefendant is independently liable from debtor).

This general rule is overwhelmingly supported in the case law and bolstered by the plain language of the statute, which clearly focuses on the insolvent party, or the "debtor." *See* 11 U.S.C. § 362(a)(1). By way of comparison, Chapter 13 specifically authorizes the stay of actions against codebtors. *See* 11 U.S.C. § 1301(a). Conversely, "[n]o such shield is provided Chapter 11 co-debtors by § 362(a)." *See Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 544 (5th Cir.1983).

Thus, in situations where a co-defendant is independently liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's liability rests on his own breach of a duty, then the protection afforded a debtor under the automatic stay would clearly not extend to such nondebtor.

*In re Metal Ctr., Inc.,* 31 B.R. at 462.

■ In "unusual situations," a narrow exception provides for the imposition of a stay under § 362(a)(1) against a nonbankrupt party "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Blodgett,* 24 F.3d at 142 (citing *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986)). An example would be the situation where

a debtor and a nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law, then the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code.

*In re Metal Ctr., Inc.,* 31 B.R. at 462.

Courts have generally extended the automatic stay in the "unusual situation" where an action against one party is essentially an action against the bankruptcy debtor, as in the case where a third-party is entitled to indemnification by the debtor for any judgment taken against it. *See In re North Star Contracting Corp.,* 125 B.R. 368, 371 (S.D.N.Y.1991) ("*Robins* and other courts have recognized that an identity of interest exists between a debtor and a third party non-debtor when a right to indemnification exists. These courts reason that a special circumstance exists because a judgment against the non-debtor will affect directly the debtor's assets.").

■ Defendant Huge asserts that Wings' bankruptcy filing should extend the stay against Huge because Huge and Wings are co-debtors with joint and several liability under the Loan and Security Agreement, and because actions against Huge will severely impact property of the bankruptcy estate. It is important to note at the outset that Fleet is proceeding solely against the property of Huge in its motion to appoint a receiver over the real property. Fleet seeks the receivership to collect and hold rents over the nine (9) tracts of real property owned by Huge and leased to Wings for operation of its KFC

franchise restaurants. No action has been taken against the personal property or equipment of Wings, the bankruptcy debtor.

Under the terms of the Loan and Security Agreement, Huge and Wings are co-borrowers, jointly and severally liable for the obligations to Fleet. However, each of the borrowers is primarily and directly liable to Fleet under the Agreement. Section 9.11(a), entitled Joint and Several Liability, provides that

The Obligation shall be joint and several obligations and liabilities of Borrower. Hence, each of the Real Estate Borrower and Equipment Borrower shall be primarily and directly liable for repayment of the Loan and all other Obligations, whether or not such Borrower signed a Note evidencing such obligation.

Therefore, although Wings and Huge are jointly and severally liable under the Agreement, Huge also remains directly and independently liable for all Obligations to Fleet.

■ Fleet further notes that the right of indemnification between Huge and Wings is expressly waived under Section 9.11(e) of the Agreement, which provides:

No payment made by or for the account of a Borrower including, without limitation, (i) a payment made by such Borrower on behalf of the liabilities of the other Borrower or (ii) a payment made by any other person under any guaranty, shall entitle such Borrower, by subrogation or otherwise, to any payment from such other Borrower or from or out of such other Borrower's property and such Borrower shall not exercise any right or remedy against such other Borrower or any property of such other Borrower by reason of any performance of such Borrower of its joint and several obligations hereunder.

The Court is persuaded that this express waiver of indemnification between the two co-defendants, in conjunction with Huge's direct and independent liability under Section 9.11(a), is sufficient to separate Wings and Huge and allow the appointment of a receiver over the real property of Huge without frustrating the purposes of the automatic stay in the Wings bankruptcy proceeding. *See, e.g., Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3d Cir.1991) ("[T]he automatic stay is not available to non-bankrupt co-defendants of a debtor even if they are in a similar legal or factual nexus with the debtor."). Section 362 of the Bankruptcy Code "does not protect related but *independent* codefendants." *In re Metal Ctr., Inc.,* 31 B.R. at 462.

Huge's attempt to bolster its assertion that Wings and Huge maintain such an "identity of interest" that acting against Huge would, in effect, constitute an action against Wings by citing Section 9.4 of the Agreement is unpersuasive. Under Section 9.4, "Indemnity," *Wings* must indemnify *Fleet* and hold Fleet harmless from and against any losses related to the loan, including "costs and expenses" such as attorney's fees. Thus, Huge contends that, by virtue of this action proceeding against Huge, Fleet is currently cumulating fees and expenses that can later be asserted against Wings. However, it is again significant to note that in this action Fleet is merely seeking the appointment of a receiver over the real property of *Huge* to collect and hold any rents paid by Wings to Huge under their lease agreement. No money judgment has been taken against Huge or Wings at this juncture. In fact, Fleet solely desires to collect and hold the rents obtained by Huge from Wings during the pendency of this case to ensure their preservation. As debtor-in-possession, Wings has allegedly reopened some

of the KFC franchise restaurants and indicated an intent to reopen others. Fleet seeks to collect and hold rents paid until a determination of entitlement to the funds is made.

Huge's argument that appointing a receiver will undermine Wings' reorganization effort in the Chapter 11 bankruptcy also fails. In contrast to the Court in *In re Brentano's, Inc.*, 27 B.R. 90 (Bankr. S.D.N.Y.1983), this Court fails to see how either the pursuit of claims against Huge or the appointment a receiver to collect rents, in light of a *potential* indemnification claim by *Fleet* against *Wings* under Section 9.4 of the Agreement, will "ultimately determine the fate of [Wings'] reorganization effort." *Id.* at 91. As previously discussed, this action merely seeks the appointment of a receiver over Huge's real property to collect and hold rents of approximately $48,331.00 per month that will likely be paid to Huge by Wings in any case because Wings has reopened some of the restaurants. Collecting and holding these rents certainly will not impact the entire "fate" of the Wings reorganization effort.

Fleet additionally contends that Huge has failed to follow the proper procedural path to avail itself of the protection of Wings' automatic stay in its failure to request injunctive relief. *See, e.g., In re Continental Airlines*, 177 B.R. 475, 477 (D.Del.1993); *In re Litchfield Co. of South Carolina Ltd., Partnership*, 135 B.R. 797, 799 (W.D.N.C.1992); *In re Sudbury, Inc.*, 140 B.R. 461, 462 (Bankr.N.D.Ohio 1992); *In re Kmart Corp.*, 285 B.R. 679, 682 (Bankr.N.D.Ill.2002); *In re North Star Contracting Corp.*, 125 B.R. 368, 369 (S.D.N.Y.1991); *In re Lomas Fin. Corp.*, 117 B.R. 64, 65 (S.D.N.Y.1990); *In re Zenith Laboratories, Inc.*, 104 B.R. 659, 661 (D.N.J.1989); and *In re Circle K Corp.*, 121 B.R. 257, 258 (Bankr.D.Ariz.1990).

However, while Fleet's observation that several cases cited by Huge involved either a request for injunctive relief or an application by the bankruptcy debtor in the bankruptcy court to extend the protection of the automatic stay to a co-defendant is well-taken, the Court finds that this case does not turn on Huge's failure to request injunctive relief.

It is not mandatory that a non-bankrupt party request injunctive relief in order to avail itself of the protection of the automatic stay if it is entitled the stay's protection, i.e., if the non-bankrupt party and the debtor have such an "identity of interest" that a judgment against the non-bankrupt party would essentially be a judgment against the bankruptcy debtor. In fact, under § 362, the automatic stay "is self-executing, effective upon the filing of the bankruptcy petition." *See In re Pettit*, 217 F.3d 1072, 1077 (9th Cir.2000). Accordingly, the Court concludes that the fact that neither Huge nor Wings have requested injunctive relief does not determine the outcome of this case.

**B. APPOINTMENT OF A RECEIVER OVER THE REAL PROPERTY**

The Court finds that the appointment of a receiver over the real property of Huge in order to collect and hold any rents paid to Huge by Wings during the pendency of this case is proper and does not violate the automatic stay against Wings. Under 12 Okla. Stat. § 1551(2)(c), a receiver may be appointed in a foreclosure action when "a condition of the mortgage has not been performed and the mortgage instrument provides for the appointment of a receiver." Each of the nine (9) properties at issue have been pledged by Huge to Fleet to secure repayment of the loans extended by Fleet pursuant to substantively identical forms of a Mortgage, Security Agreement, Financing

Statement, and Assignment of Rents and Leases. Each of the mortgages contain an identical clause in Section 11(a) of the Oklahoma leases and Section 11(b) of the Kansas leases under which Huge consented to the appointment of a receiver in the event of a foreclosure action. Each of the mortgages similarly contain language in the granting clause by which the interest pledged by Huge to Fleet includes "all the rents, issues and profits of the Real Property. . . ." [Doc. No. 38, Exhibit C, Mortgage document dated October 10, 2000 between Fleet and Huge].

■ Fed.R.Civ.P. 66 provides for the appointment of a receiver "in accordance with the practice heretofore followed in the courts of the United States. . . ." Additionally, "[c]reditors with a security interest in real property have a well-established interest in the property sufficient to support the appointment of a receiver." *See Brill & Harrington Investments v. Vernon Savings & Loan Ass'n,* 787 F.Supp. 250, 253 (D.D.C.1992); *see also* 12 C. Wright & A. Miller, *Federal Practice & Procedure* § 2983 (1973). The Court in *Brill & Harrington Investments* noted that federal courts typically consider eight (8) factors in determining the propriety of appointing a receiver pursuant to Fed.R.Civ.P. 66. These factors include:

(1) inadequacy of the security to satisfy the debt;

(2) financial position of the debtor;

(3) fraudulent conduct on defendant's part;

(4) inadequacy of legal remedies;

(5) imminent danger of the property being lost, concealed, injured, diminished in value, or squandered;

(6) probability that harm to moving party by denial of appointment would outweigh injury to parties opposing appointment;

(7) probability of moving party's success in the action and the possibility of irreparable injury to its interest in the property; and

(8) whether moving party's interests sought to be protected will in fact be well-served by receivership.

*Brill & Harrington Investments,* 787 F.Supp. at 253–54.

Fleet's counsel discussed these factors at the expedited hearing on the motion to appoint a receiver and noted that the financial position of the debtor Huge is tenuous in that it owns nine (9) parcels of real property leased to one (1) tenant, Wings, who is now in bankruptcy. No evidence of fraudulent misconduct on the part of Huge exists. In terms of the inadequacy of legal remedies, Fleet notes the possibility that rent money could be spent by Huge and forever lost without a receiver to collect and hold rents during the pendency of this case. Fleet further contends that Huge will not suffer any harm if the money is merely collected and held by the receiver. Therefore, based on the fact that several of the factors weigh in favor of the propriety of appointing a receiver over the real property of Huge, the Court finds that appointing a receiver to collect and hold rents is a necessary remedy to protect the interests of Fleet as creditor and outweighs any speculative harm to Huge.

Fleet proposes the appointment of Ben C. Kemendo as receiver over the real property of Huge. Mr. Kemendo's duties as receiver will entail collecting and holding any rents paid by Wings to Huge pursuant to its lease of the property pending resolution of this case and a determination of entitlement to the funds. Under the lease agreement, Wings is obligated to provide insurance as well as maintenance and pay all utilities and taxes, including property taxes. Fleet notes that Huge's expenses of operation or administration

will be minimal or non-existent. Additionally, Mr. Kemendo will not need the approval of Defendant Intervenor KFCC since Kemendo, as a Huge receiver, will not be operating the KFC franchise restaurants or using its trademarks, trade names, or recipes.

### *CONCLUSION*

The Court holds that appointing a receiver over the real property of Huge, a solvent co-defendant of Wings, does not violate the automatic stay in the Wings bankruptcy proceeding based on the fact that Huge is separately and independently liable for obligations to Fleet under the Loan and Security Agreement and has expressly waived any right of indemnification against Wings. Therefore, Huge does not qualify for the narrow exception to the general rule that the automatic stay is not extended to solvent co-defendants of the bankruptcy debtor because it has failed to demonstrate that such an "identity of interest" exists between Wings and Huge that a judgment against Huge would essentially be a judgment against Wings. The sole purpose of the receiver in this action will be to collect and hold any rents paid to Huge during the pendency of this case until a determination of entitlement to the funds is made. Accordingly, the Court **GRANTS** Fleet's Motion to Appoint a Receiver over the Real Property of Huge and to appoint Ben C. Kemendo as receiver in order to collect and hold any rents paid by Wings to Huge. [Doc. No. 38].

IT IS SO ORDERED.